Good morning. I please the Court. I'm Michael Cochran, attorney for the plaintiff and appellant Dan Drobnicki. I request two minutes for rebuttal. You have to help keep track of your own time because that's the total time remaining. Okay. Thank you. This action is being brought under the Individuals with Disabilities Education Act and the 56,000 series of the California Education Code. There are a number of issues that have been presented. I'd like to start with the issue of the substantive appropriateness of the IEP. The school district has asserted that the plaintiff did not establish that there was anything substantively deficient with the IEP because we did not call any experts to challenge the IEP. This Court has held, however, that in Hood v. Encinitas Unified School District that a child with a disability who needs educational needs can be met with accommodations only and who does not need specially designed instruction does not qualify for an IEP, does not qualify for special education. In this case, the school district, members of the IEP team, determined that Daniel Drobnicki needed specially designed instruction, that he qualified for special education, and furthermore, determines the areas of educational need as delineated by the annual goals and objectives in the IEP. Those annual goals and objectives included reading, writing, and organizational skills. So the school district has determined that he needed specially designed instruction and determined the areas of need in which that instruction was necessary under the Roe v. Standard. However, the school district did not include any specially designed instruction in the IEP designed to help the student to meet those annual goals. If you read through the briefs, you see that there's a sleight of hand going on here where instead of saying the district offered special education, they talk about implementing the goals. You do not implement goals. The special education teacher who testified, Barbara Ever, even said that. You do not implement goals. You implement services, instruction in order to achieve those goals. But there was a list of, you may disagree with it, but they had him assigned to this so-called learning schools class, which apparently was somehow affiliated with his English class. And they had other, they had accommodations, and I understand your argument is accommodations are in special education. But they did have some indication of how they were going to, his problem seemed to be largely that he didn't complete assignments. Well, that was part of the problem. But according to the IEP team, the reason why he required specialized instruction was because the goals and objectives included reading, writing, and organizational skills. Well, what specially designed instruction should he have been offered? Well, that's the thing. This is not a case where, for example, the district is offering one program, like, say, the Wilson reading program, and the parent says, no, I like the Linda Mood-Bell program more, and we're litigating over which is the appropriate program. If that were the case, then there'd be some deference given to the educational agency. Here there's no program. So the parent is coming in, and they're saying, we want to segregate your child for two hours a day. And in that class, essentially it's nothing more than a study hall class. And you're saying the learning strategies class, because I understand the Wolverine time is a study hall, but are you saying that the learning strategies class is also a study hall? It essentially is. According to Ms. Everett, she only provided instruction from time to time, and she testified that there was no curriculum for that class. Daniel also testified that there was no syllabus for that class. And he also testified that essentially what Ms. Everett did was she had the students work in groups on their homework, and she spent most of her time trying to keep these kids on track. And so you have a group of low-achieving special education kids, and she's telling them, work together on your homework assignments. But they're not being provided specially designed instruction relating to their goals and objectives. Are you going to discuss the question of the time of the IEP meeting and the fact that parents didn't come and so on? In regards to the October 10th, certainly. This is a situation in which the statute indicates that IEP meetings are required to be held at a mutually agreed upon time. It is uncontested that the parent never agreed to the October 10th, 2005 IEP meeting to that time. She objected on a couple of grounds. First, they were in the middle of a due process hearing. They had started the hearing the previous week. The October 10th day was on Columbus Day. They were going to be in a due process hearing the very next day. The parent asked in the e-mail to Mr. Murray where she stated that she wasn't sure if she could be there because she thought she was going to be in a due process hearing on Columbus Day. She also said, why are you bringing your lawyer to this meeting? This smelled like an ambush. She was going to be testifying the very next day. Was this day a holiday in the school? It's a holiday for OAH, the state education agency, but it's not for the school district. So the due process hearing would not take place then? It would not take place, but according to the mother, there was a conversation on that Friday in which the parent then found out that there was going to be a one-day recess because of Columbus Day. According to the parent, in her testimony in this regard, it was uncontroverted. She said that she told the judge in front of the school district's attorney, in front of Mr. Murray, and in front of the program specialist, that she had a medical appointment that day that she was going to cancel in order to be at the hearing. But if they're not going to be in hearing, then she'll go ahead and go forward with that medical appointment. So the district was on notice on the previous Friday that the mother intended to go to a medical appointment the next Monday. And the mother had never stated that she agreed to that date, and the district never came back and said, by the way, we intend to go forward since this is a Columbus Day and obviously we're not going to be in hearing. Another point I wanted to make, though, is first of all, the mother was concerned that there was going to be a cross-examination. They can then, during this supposed IEP meeting, in the next hearing, they can have their employees testify as to what the parents said at that meeting, as a trial tactic. So that's not a collaborative thing. But another thing, most of the people in this room have been involved in trial litigation. This mother was in pro per representing her child's interests in the middle of a hearing, and here the district wanted to hold an IEP meeting, when right smack dab in the middle of trial, when she's going to be in trial the very next day, it was perfectly reasonable for the mother to object to a two-day delay for the IEP meeting. And the district is saying, this puts us in a no-win situation, because we scheduled an IEP meeting on September 15th. There was clearly insufficient time to complete the IEP. Then we sent out a notice of IEP form two days before the IEP was due. And then we were already in violation, so therefore, because we violated the IDEA, we couldn't wait any longer. And so we were going to go ahead and hold the IEP meeting without the parent, knowing that they couldn't implement that IEP without the parent's informed consent. And so their holding this IEP meeting without the parent actually caused further delay in the process. I'm trying to figure out how all this relates. If the IEP hearing, if this meeting was deficient, if they interfered with the rights to participate in the development of the IEP, then does that mean that the remaining arguments with respect to the IEP's insufficiency would be moved? Well, there's case law that says that if there's a procedural defect, the court's inquiry stops there. However, those cases are cases in which the court is affirming a denial-of-fate decision. If the court intends to remand this back to the district court to determine the appropriateness of reimbursement of the parent's educational expenses, the court may consider that it might be important that the district court have all the bases. All that's involved at this point is the reimbursement issue, because I think the child now is, what, 19? It is. And in fact, we're now down to, I believe it's $4,300 for the fusions tuition and $1,050 for reimbursement for tutoring. Because in a subsequent due process hearing, the district was found to have denied Daniel a fate by failing to implement the IEP. Well, that was my question. But the due process hearing is going on in the meantime with respect to whether he had a fate for, what, the preceding year? For the preceding year. Because I had three due process hearings. Right. And how did they all come out? Well, the first one, first two came out in the district's favor. And the third one came out in the parent's favor. And the third one was, I alleged in the second case the district failed to implement the IEP as an issue. The judge said, well, the district filed this case against the student, and they didn't put their implementation of the IEP in issue, so I'm not going to rule on that. Even though there is substantial evidence by their own teachers that they didn't implement the IEP. Okay. So I understand what I think Judge Okuda does understand. All that's at stake here is the reimbursement of some thousand dollars for the period? For that school year. Which school year? The 2005-2006 school year. Because the other school years were covered by the other? Well, it was actually the same school year that we got a partial recovery from on the basis that they didn't implement the IEP. So has there been any effort at mediation or to resolve this outside of? There was. These matters actually require that there be a resolution session prior to the due process hearing. And, of course, in the district court, we had an early settlement conference, and without saying the outcome of that, obviously we're here. Okay. And so one other point I wanted to make, too, is the district... Now, because of the way this thing happened, was there a later meeting in December, right? Well, that's correct, and that's an important point. The district court inaccurately stated that was an IEP meeting. The December 1, 2005 meeting was not an IEP meeting. Right. It said on top of the form that it was an IEP meeting, but it wasn't really treated that way. Right. Mr. Murray stated in his testimony it was not an IEP meeting, and discussion of the IEP was not allowed. All that would be allowed is that the parent would be allowed to talk to the teachers about missing assignments and generally how he's doing in their classes. So was there... What I'm trying to get at is you have substantive complaints now about the IEP. Was there an opportunity for the parent to raise those substantive complaints other than the due process hearing, given the way this happened? Ordinarily. No. They would not discuss the IEP. They would only hold a site meeting. And at the September meeting, was the district's proposal the same or different? Well, there was a draft IEP given to the parent, and I don't recall whether or not there was... Generally speaking, the standard is they don't include, they only include the goals and objectives, present levels. They don't want to appear like they predetermined the placement. So I'm not sure if they actually stated the placement in the draft. They may have, I don't recall. But I... I'm sorry, I forgot your question. Well, I'm just trying to figure out whether the kinds of issues that you're raising now with regard to the substance as to whether there was, in fact, special education offered and so on, whether there was an opportunity to raise those complaints earlier. There was actually a lot of discussion that the parent did not like Daniel being in that class, that she didn't feel he was getting anything out of it. Discussion being at the September meeting? No, no, no. That was subsequent to that. In fact, there was a decision later to modify, without even changing the IEP. They just agreed that he was only going to go to learning strategies twice a week. But here, the parent was to completely deprive all educational decisions from being at that October 10th meeting. At the September 15th meeting, they only reviewed the goals and objectives from the previous year, and they didn't change them. They reviewed them from the previous IEP, and they started to review his present levels of performance, which never included the fact that he was failing all his classes. And that was part of the key issues in regards to none of the teachers, except for the 12-minute appearance by the ceramics teacher, were his current teachers. So how do we review the questions in that the district court did have a bench trial, right? The district court did have a bench trial. Originally, there was a motion for summary judgment by the district. And after all the briefs were filed, I wrote the opposition brief, believing that the standard was a genuine and assured material fact. After all the briefs were filed, the district court said, I'm going to treat this as a trial brief on a stipulated record. And then we did have an oral argument and some supplemental evidence. So were there hearings with live testimony or not? For the district court, there was just a minimal to establish foundation for the medical records that the mother put into evidence. So the district judge made some fact findings with regard to the mother's non-appearance on October 10th. Well, he appeared to rely upon the medical record. The mother's appearance testimony for the district court was basically just to lay the foundation that I got this from the doctor's office. It's a true and correct copy of what I received. And then there was some cross-examination, because there's a discrepancy between the medical record and the parent's testimony as to when. And why did she say that? Because you thought she was lying about the medical appointment. Right. She had a credibility problem overall, right? She has sworn testimony, she's been completely consistent throughout. She produced these medical records. And medical records are sometimes inaccurate, especially when it relates to billing or scheduling that aren't related to patient care. So but the judge seemed to also remember, as I pointed out in my briefs, that the judge only looked at the start times. In either scenario, the parent was not available. If she had a medical appointment at 1.30 and the IEP meeting went from 11.40 to 4.30, she's clearly unavailable.  All right. You've more than used your time. We may have some questions for you after we hear from the appellee. Thank you. A couple of things I want to comment on. I think a little background needs to be provided here. The child has been a member of the special education program within the Powell Unified School District since 2003. Counsel was accurate that there were three due process hearings, but I think the order of them was a little off. The initial due process hearing was held to determine if triennial assessments performed in 2003 were accurate. The district was found to have properly assessed and diagnosed the student and also pledged him in the special education program. At the time of the October 10, 2005 IEP meeting, there was a second due process hearing that was occurring. It was whether or not the IEP for the previous year was substantively proper. The ruling in that case was that the IEP was proper. There was then, as we stated, the October 10, 2005 IEP team meeting, which was a continuation of the September 15 meeting. That was for the 2005 school year. Correct. Which had to be done in the fall. The September 15, 2005 hearing wasn't completed. It was only scheduled for an hour. It was never designed to be completed in that one-hour session. There was a second session noticed on September 29 by the district for October 10. On October 4, we got an e-mail from the parent stating that she didn't know if she could attend because they were in due process on that date. Is that the way the district usually schedules meetings? I mean, there was some education on the record that ordinarily, for example, when they scheduled a December meeting, they wrote to her and said, here are some dates, when can you come? But they didn't do that. They just chose a date and they wrote to her. Is that typical? In this particular case, there was testimony from plaintiffs that in the past she had been given choices as to the particular date. And the record shows that about the December meeting. In the district's mindset, when they sent this September 29, 2005 letter, there may have been some misunderstandings in this whole process, but it never was the intent of the district to simply plan a meeting that the parent could attend. And I think if we look at the actual dates in between the time we noticed that. But there was some form she was supposed to send back and she didn't. Well, her stated reason for not being able to attend the meeting on October 10th was because there was going to be a due process here. I'm not here to tell you that the district couldn't have handled this in a better way. But I am here to tell you that there was a misunderstanding. One surely gets the impression these people don't like each other. Well, I can't comment on her feelings for the district. I do know that at the oral arguments on the motion for summary judgment, which I would like to address also in regards to there being limited testimony, because the reporter's transcript shows that there was ample testimony. Her original reason given, as I stated on October 4th, was that she couldn't attend because of the due process hearing. The district was aware of the fact prior to October 7th that there would be no hearing on October 10th. They don't know whether she's aware and they don't know whether she understands that they're coming. Exactly. Her purported reason later for not attending was that she had a medical appointment. Does that really matter if it's the obligation of the school district to schedule an IEP meeting at a mutually agreed upon place? As long as she doesn't refuse or decline to attend any meetings, isn't it the onus on the school district to find that mutually agreeable time? I think it was reasonable for the school district in this case to assume that she was her goal. And if you hear from the testimony today, all of these extra reasons, it was an ambush. It was going to be a cross-examination. The IEP is designed to be a collaborative process. Well, forget all that, but she also says and hasn't been contradicted that she said in the presence of one of the key people from the district on the Friday before that she had a medical appointment on Monday. I don't consider it to be uncontroverted when you ask someone, when she makes a statement that I said this and no one else says, yes, we heard you say that. No one said I didn't say it either. She says you heard it and he doesn't say he didn't. That's uncontroverted. It may not be true, but it's uncontroverted. But the controverted portion is if you look at the dates, October 4th, you knew you had a medical appointment. You send an e-mail. You don't say anything about a medical appointment. You say that you can't attend because of a due process hearing. October 7th, her testimony is that in front of a judge and in front of another attorney, I said I couldn't make it because there's a medical appointment. That's the first time we hear of any medical appointment on October 7th. Her testimony is that she knew about it six months before. I mean, because if I'm trying to schedule a meeting with someone and they don't say that they're going to appear at the meeting for whatever reason, I don't cross-examine whether the reason is legitimate or not, I don't have a mutually agreed upon date. Correct. This only became an issue after the fact. If you look back to the past history, which the judge, the ALJ, took into consideration, plaintiffs, the student's parent had a history of saying I'm not attending any more IEP meetings. And he utilized that fact in an uncontroverted finding in a prior due process hearing. Did the district judge make that, she says that's not so, that she actually never did show up. Did the district court make a finding about that? The district court indicated in his ruling that there had been a history of problems with attending IEP meetings. And a request for judicial notice was made of the decision from the prior ALJ in the prior due process hearing that she had stated this. Now, but there were other men. But what she stated was, all I remember is she was angry and she said I'm not going to come to any more. Was there any evidence she actually didn't come? She actually didn't come to. No. No. She came to the district court. There was evidence that when she made the statement in January of 2005, she came to meet exactly that. But he used that to assess her credibility on the issue of whether or not her goal was to not have this IEP. Well, what would that mean if she never didn't come to a meeting? Why would that indicate that she was likely not to show up for ulterior reasons? As was done in this decision, the parent was placing the district in a situation where if it accommodated her and held off on conducting the IEP meeting, the argument would be made, which was made in this case, that she didn't complete the IEP in a timely fashion. Well, they were already late, right? That's what opposing counsel says, that they already missed the deadline because that was October 1st. By your account, they scheduled a meeting in September knowing they couldn't finish it. Correct. Well, why do that if you have a deadline? Well, according to what has been put in the briefs, we had a meeting scheduled for September 15th, which was within the timeline. We were going to attempt to complete it as soon as possible. You just said that you knew that September 15th meeting could not be completed. They could not complete the final IEP, but they would have attempted to complete it within that time period. But there's no evidence that they said to her, are you available for some day between September 15th and October 1st, right? They didn't offer her any day between September 15th and October 1st. No. The only evidence in the record is that they sent the notice of the October 10th, 2018, on September 29th. And then they got multiple reasons in between that time period as to why she couldn't attend. But they were already late. Well, that doesn't mean that they shouldn't attempt to complete the IEP. I mean, the child still needs an IEP. Did she offer a different time? No. No different time was offered. No explanation was given in the email about I'll be willing to do this on October 12th. An indication is being made by a plaintiff's counsel or a public's counsel that it could have been done. But no evidence. My point that I'm making to the court is that, yes, the district could have, in hindsight, found a better way. They could not get an agreement from the parent to continue the date that they had to complete the IEP. They tried to do that. They could not get it. So when they didn't get it and they scheduled it for October 10th, and she waffled initially with I may not be able to make it because of this reason. And then she changed it to a medical appointment. And then she testified that she couldn't do anything, participate on the speakerphone, do anything at the October 10th meeting, because she was under the influence of drugs after having been at a dermatologist tumor removal session, which later proved that it wasn't accurate. But the impression the district got was that she was not attempting to cooperate at all in completing this IEP. And they knew that they would be forced with a due process hearing where she would make the argument once again that she didn't complete it in a timely fashion. And she did make that argument in this case, and it was dismissed by the ALJ and the federal district court judge. Is it your view that we should find an exception to the obligation to have a mutually agreed date where there's some evidence of not cooperating around the date that the school district picks? Is that? Because I don't think there's a case that says that, right? So you'd want us to extend the law on that? There's a statute that was cited in our brief that indicates that there's a duty to mutually cooperate here. If the parent had said on October 10th when she got that phone call and not been disingenuous about the fact that she had already had a surgery, which is proven to happen later in that day, I understand that the IEP wouldn't be on that date. But if she would have picked up the phone and said, look, I can participate until 1 o'clock. I can't participate because I'm so nervous about my surgery. If there had been any indication in the e-mail, it was simply an argumentative response that was sent on October 10th from the parent saying, I'm not participating. At that point, she actually did ask for a to be on the speaker phone, and she was refused. The testimony that was given by our two witnesses was that she was offered the opportunity to participate. Later, later. That same day. Yes, but later. After it was refused a couple times. The first phone call was done by one individual. But she didn't know that, right? This is what happened. The first call was made by a program, I mean, an RSP teacher saying, are you attending the meeting? She said, no, I'm not attending the meeting. I've already been to the doctor. I've had a surgery. I'm on medication. She said, can I be put on speaker phone? The individual said, I'm in a room by myself. There's no reason to put you on speaker phone. They then went to the meeting where it was being convened and called her back. I thought he said something to the effect of, no, you can't be on a speaker phone. This is a face-to-face meeting. No, no. That isn't the testimony. And if you look, and if you even look at. I think it is, actually. I can show it to you in the transcript. If you even look at Appellant's opening brief, he initially says that the mother requested to be put on speaker phone and was denied. In his reply brief, what he says is that she was given or I'm sorry, in the initial brief, he indicates that she was given the opportunity to participate in the meeting by a speaker phone, and she denied that request because she was agitated because of her earlier telephone call with the RSP teacher to call to see if she was going to be at the meeting. So she said, no, I'm not participating. Then in his reply brief, he switches to she's never had an opportunity. You are again refusing to put me on speaker phone so I can participate with the team. And your words are, well, Mrs. Durbin-Nikki, we are not going to be going over the meeting on the phone. Are you going to be here or not? That's her testimony in the e-mail about the first telephone call. About the first telephone call. It's uncontroverted that there were two telephone calls made. One simply to check if she was going to attend by one individual in a room by himself. A second telephone call was made approximately ten minutes later with all members of the IEP team present, asking her. There was no efforts made by her in that time to provide additional dates. There was only, no, I will not participate in this. And that's uncontroverted testimony. So I'm not telling you here that the district handled this in the best manner possible. But what they did do under the circumstances, believing that her reason for not wanting to participate in the meeting was because of a due process hearing date that didn't go forward. This is their knowledge as of that time. Hearing for the first time at this meeting, according to their testimony on October 10th, that there was a medical appointment, which was later proven that it didn't occur, it all goes to her credibility on the issue of whether or not she actually wanted to have this meeting take place. So you would say that where the parent doesn't cooperate or doesn't comply with the obligation to cooperate with the school district, then the school district has, there's an exception or is relieved of the obligation to try to schedule a mutually agreed upon date. Is that the sort of rule you would be looking for? What I'm saying is we've cited to a rule where it indicates that a reasonable accommodation is to participate by speakerphone. What I'm also saying is that in regard to this one IEP meeting, one of the biggest... But I don't see how that, I mean, I don't see unless you're trying to get the sort of rule I'm articulating, I don't see how speakerphone is good enough helps you because she says it's not a mutually agreed upon date, I don't agree to participate on this date for various reasons. They may be good or bad. So the school district has not complied with that responsibility. So how do we find in your favor then? In the totality of the circumstances, she completely participated in the September 15, 2005, IEP. She was offered the opportunity, provided no more dates for the October 10, 2005, IEP. Counsel is being disingenuous when he indicates that at the December 1, 2005, IEP meeting, they told her you can't discuss the IEP. So you're saying offering an opportunity to a parent should be sufficient under the statute? I'm saying if we were talking about one IEP meeting where the IEP report or special education program was decided in that one meeting and we had a situation here where there was a miscommunication and she indicated that she couldn't make it at that time, if that were the situation, no, it wouldn't be appropriate. In the totality of the... Why isn't that the situation? I'm sorry? Why isn't that the situation? Because in this situation, we had an IEP in September, we had an IEP in October, and we also had an IEP in December. And there is absolutely no testimony in the record whatsoever that she was told at the December 1, 2005, IEP meeting that changes could be made to the IEP if necessary. There's never been any finding whatsoever that there was a substantive problem with the IEP in the first place. So in order for there to... at the October 10, 2005, IEP team meeting, there must be a showing that that's significantly impeded on the right to participate. Well, the September meeting was for one hour, and the October meeting was for four and a half hours. Where the present levels were discussed, which is what their argument is, is that the present levels were inaccurate. And the present levels were accurate according to their own testimony that were discussed at that second meeting. All right. So at the second meeting, I mean, the second meeting was the serious one. And the earlier one was only... was one-fifth as long and didn't get to any substance as to what he was going to be doing for the current year, right? Is that accurate? Well, the first meeting looked at the goals that were drafted for them. And then the second meeting looked at... Right. And then the third meeting was... She was told it was something called a site meeting. Is that what she was told? Yeah. But if you look at the attachments that are presented by the... I mean, they were attached to a published brief at 20 U.S.C. section 1414. It talks about the necessity of yearly assessments. It talks about training assessments. And it talks about the parent can request at any time an additional meeting to update IEPs. And that wasn't done. It wasn't a problem. She didn't say, look, I have a substantive problem, and I want an IEP meeting done on this date. There's never been a finding that the substantive IEP that was provided after October 10, 2005, wasn't appropriate. In fact... They're certainly arguing that. And it would be helpful if you would quickly address their arguments in that regard. Well, the argument on the substantive issue is that we have Michael Murray testifying that the learning strategies class was what was utilized the prior year when Plaintiff actually attended the class. It was used to bring his grades above par. And that his failure to attend the learning strategies class during the 2005-2006 year is what had him failing and not completing his assignments. And that was addressed by Michael Murray in his testimony. Because he was the one that actually tutored him that year in the learning strategies. There also isn't any testimony from... There's testimony from Barbara Ebert that four to five days per week, she not only attended the English class, which was corroborated by the student in his testimony, but that anything that she knew of his assignments from that English class, so she could help him implement those in the learning strategies class. But his failure to attend didn't allow them to do that. Okay. You've more than used your time. Okay. We've helped you. Thank you. Are there any questions of the Collins Council? The matter just argued is submitted for decision. And we'll hear the last case for argument, which is Martinez v. Joe's Crab Shack, Inc.
judges: Schroeder, Berzon, Ikuta